**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

JUICY COUTURE, INC.,

                       Plaintiff,

     v.

BELLA INTERNATIONAL LIMITED, a/k/a
BELLA (d/b/a JUICY GIRL and
JUICYLICIOUS), JUICY GIRL, LTD., GOLD
STABLE INTERNATIONAL LTD.,
GOLDSTABLE INTERNATIONAL
CORPORATION, JOHN SUEN, ALISON
LAW, JESSICA CHING PING YANG and
JOHN DOES 1-10,

                 Defendants.

Civil Action No. 12-05801(RA)(HBP)


## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION


**Davis Wright Tremaine LLP**
**1633 Broadway**
**New York, New York 10019**
**(212) 489-8230**

*Attorneys for Plaintiff Juicy Couture, Inc.*

## TABLE OF CONTENTS

Page

I.      PRELIMINARY STATEMENT ................................................................................ 1

II.     STATEMENT OF FACTS .................................................................................... 2

    A.      Plaintiff's Trademarks and Products..................................................................... 2

    B.      Defendants' Illegal Activities ............................................................................. 4

III.    ARGUMENT ................................................................................................... 8

    A.      Plaintiff will Suffer Irreparable Injury Absent the Injunction and Damages
        Are an Insufficient Remedy .............................................................................. 9

    B.      Likelihood of Success on the Merits.................................................................. 10

        1.      Plaintiff is Likely to Prevail on its Claim for Trademark
            Counterfeiting .................................................................................... 10

        2.      Plaintiff is Likely to Prevail on its Claims for Trademark
            Infringement and Unfair Competition ...................................................... 11

            a.      The JUICY Marks are Strong, Inherently Distinctive, Valid
                and Protectable......................................................................... 12

            b.      Defendants' Marks are Identical and/or Confusing Similar to
                Plaintiff's JUICY Marks ............................................................ 13

            c.      The Parties' Goods are Identical or Related, Travel in the
                Same Channels of Trade and are Targeted to the Same
                Consumers................................................................................ 15

            d.      Bridging the Gap Between the Parties' Goods and Services........ 15

            e.      Evidence of Actual Confusion.................................................... 16

            f.      Defendants are Acting in Bad Faith............................................ 16

            g.      The Quality of Defendants' Goods ............................................ 17

            h.      The Sophistication of the Consumers ......................................... 18

        3.      Plaintiff is Likely Prevail on its Anticybersquatting Consumer
            Protection Act Claims.......................................................................... 18

    C.      The Balance of Hardships and Public Interest Favor the Injunction ................... 19

IV.     CONCLUSION................................................................................................ 20

DWT 19629950v14 0095997-000001

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*A.T. Cross Co. v. Jonathan Bradley Pens, Inc.,*
   470 F.2d 689 (2d Cir. 1972) .................................................................14

*Abercrombie & Fitch Co. v. Hunting World, Inc.,*
   537 F.2d 4 (2d Cir.1976).....................................................................12

*Albert Furst von Thurn und Taxis v. Karl Prince von Thurn und Taxis,* No. 04 Civ. 6107,
   2006 WL 2289847 (S.D.N.Y. Aug. 8, 2006)............................................19

*Am. Express Co. v. Am. Express Limousine Serv.,*
   772 F. Supp. 729 (E.D.N.Y. 1991) ........................................................14

*Artisan Mfg. Corp. v. All Granite & Marble Corp.,*
   559 F. Supp. 2d 442 (S.D,N.Y. 2008) ....................................................16

*Bellbrook Dairies, Inc. v. Hawthorn-Melady Farms Dairy, Inc.,*
   253 F.2d 431 (C.C.P.A. 1958) .............................................................14

*Boston Professional Hockey Ass'n v. Dallas Cap & Emblem Mfg., Inc.,*
   510 F.2d 1004 (5th Cir.), *cert. denied,* 423 U.S. 868 (1975).......................8

*Casa Editrice Bonechi, S.R.L. v. Irving Weisdorf & Co.* 1995 WL 528001 (S.D.N.Y.
   Sept. 6, 1995).................................................................................13

*Clinique Labs., Inc. v DEP Corp.,*
   945 F. Supp. 547 (S.D.N.Y. 1996) ....................................................13, 15

*Dallas Cowboys Cheerleaders v. Pussycat Cinema, Ltd.,*
   604 F.2d 200 (2d Cir. 1979)................................................................8, 9

*Diarama Trading Co., Inc. v. J. Walter Thompson U.S.A., Inc.,*
   No. 01 Civ. 2950, 2005 WL 2148925 (S.D.N.Y. Sept. 6, 2005) .................19

*El Greco Leather Prods. Co. v. Shoe World, Inc.,*
   806 F.2d 392 (2d Cir. 1986).................................................................9

*Firma Melodiya v. ZYX Music GmbH,*
   882 F. Supp. 1306 (S.D.N.Y. 1995).......................................................9

*Fisher-Price, Inc. v. Well-Made Toy Mfg. Corp.,*
   25 F.3d 119 (2d Cir. 1994)..................................................................9

*Fruit-Ices Corp. v. Coolbrands Int'l, Inc.,*
   335 F. Supp. 2d 412 (S.D.N.Y. 2004) ...................................................12

ii

*GFTM, Inc. v. GFTM, LLC,*
   215 F. Supp. 2d 273 (S.D.N.Y. 2002)............................................................................18

*Gucci America, Inc. v. Exclusive Imports Intern.,*
   No. 99 Civ. 11490, 2007 WL 2892668 (S.D.N.Y. Oct. 2, 2007) ...........................................10

*Guinness United Distillers & Vintners B.V. v. Anheuser-Busch, Inc.,*
   No. 02 Civ. 0861 (LMM), 2002 WL 1543817 (S.D.N.Y. July 12, 2002) .............................18

*Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,*
   596 F.2d 70 (2d Cir. 1979).................................................................................................9

*Jordache Enters., Inc. v. Levi Strauss & Co.,*
   841 F. Supp. 506 (S.D.N.Y. 1993) ..................................................................................16

*Kraft Gen. Foods Inc. v. Allied Old English. Inc.,*
   831 F. Supp. 123 (S.D.N.Y. 1993) ..................................................................................17

*Lois Sportswear, US.A. v. Levi Strauss & Co.,*
   799 F.2d 867 (2d Cir. 1986) ............................................................................................16

*Lorillard Tobacco Co. v. Jamelis Grocery, Inc.,*
   378 F. Supp. 2d 448 (S.D.N.Y. 2005).............................................................................10

*Louis Vuitton Malletier & Oakley, Inc. v. Veit,*
   211 F. Supp. 2d 578 (D. Pa. 2002)..................................................................................19

*Lucas Nursery v. Grosse,*
   359 F.3d 806 (6th Cir. 2004) ...........................................................................................19

*Malletier v. Burlington Coat Factory Warehouse Corp.,*
   426 F.3d (2d Cir. 2005)....................................................................................................13

*Mattel, Inc. v. Internet Dimensions, Inc.,*
   55 U.S.P.Q. 2d 1620 ........................................................................................................19

*McGregor-Doniger Inc. v. Drizzle Inc.,*
   599 F.2d 1126 (2d Cir.1979)............................................................................................18

*MetLife, Inc. v. Metro. Nat'l Bank,*
   388 F. Supp. 2d 223,235 (S.D.N.Y. 2005) ......................................................................18

*Natural Organics, Inc. v. Nutraceutical Corp.,*
   426 F.3d 576 (2d Cir. 2005) ............................................................................................12

*New York City Triathlon, LLC v. NYC Triathlon Club, Inc.,*
   704 F. Supp. 2d 305 (S.D.N.Y. 2010).....................................................................9, 10, 11

DWT 19629950v14 0095997-000001

*Otokoyama Co. Ltd. v. Wine of Japan Import, Inc.*,
  175 F.3d 266 (2d Cir. 1999)......................................................................................................11

*Pfizer Inc. v. Sachs*,
  652 F. Supp. 2d 512 (S.D.N.Y. 2009) ...................................................................16, 17, 18

*Polaroid Corp. v. Polarad Elecs. Corp.*,
  287 F.2d 492,495 (2d Cir. 1961), *cert. denied,* 368 U.S. 820 (1961).......................... passim

*Polymer Technology Corp. v. Mimran*,
  975 F.2d 58 (2d Cir. 1992), *aff'd* 37 F.3d 74 (2d Cir. 1994) ......................................................9

*Pretty Girl, Inc. v. Pretty Girl Fashions, Inc.*,
  778 F. Supp. 2d 261 ...............................................................................................................20

*Rodgers v. Wright*,
  544 F. Supp. 2d 302 (S.D.N.Y. 2008).....................................................................................14

*Sporty's Farm LLC v. Sportman's Mkt., Inc.*,
  202 F.3d 489 (2d Cir. 2000).....................................................................................................18

*Stern's Miracle-Gro Prods., Inc. v. Shark Prods., Inc.*,
  823 F. Supp. 1077 (S.D.N.Y. 1993) ..................................................................................16, 17

*T. Anthony, Ltd. v. Malletier*,
  No. 93 Civ. 6900 (KC),1993 WL 659682 (S.D.N.Y. Nov. 24, 1993)..................................13

*The Morningside Group Ltd. v. Morningside Capital Group, L.L.C.*,
  182 F.3d 133 (2d Cir. 1999).....................................................................................................18

*United States Polo Ass'n v. PRL USA Holdings, Inc.*,
  800 F. Supp. 2d 515 (S.D.N.Y. 2011).....................................................................................11

*Virgin Enters. Ltd. v. Nawab*,
  335 F.3d 141 (2d Cir. 2003) .....................................................................................................12

*Wal-Mart Stores, Inc. v. Samara Bros, Inc.*,
  529 U.S. 205 (2000)..................................................................................................................13

*Warner Bros., Inc. v. Gay Toys, Inc.*,
  658 F.2d 76 (2d Cir. 1981).........................................................................................................8

*Wesley-Jessen Div. of Schering Corp. v. Bausch & Lomb, Inc.*,
  698 F.2d 862 (7th Cir. 1983) .....................................................................................................9

DWT 19629950v14 0095997-000001

**FEDERAL STATUTES**

15 U.S.C. § 1057(b) ........................................................................................................13

15 U.S.C. § 1065 ..............................................................................................................13

15 U.S.C. § 1115 ..............................................................................................................13

15 U.S.C. §§ 1116(d) and 1127 .......................................................................................11

15 U.S.C. § 1125(d) .........................................................................................................18

Anticybersquatting Consumer Protection Act of 1996 ....................................................18

§§ 32, 34 and 43 of the Trademark Act of 1946, 15 U.S.C. § 1051, *et seq.* ...........2, 3, 4

**OTHER STATUTES**

New York General Business Law § 349 .............................................................................11

**RULES**

Fed. R. Civ. P. 65 ...............................................................................................................1

DWT 19629950v14 0095997-000001

Plaintiff Juicy Couture, Inc. ("Juicy Couture" or "Plaintiff") submits this Memorandum of Law in Support of its Motion for a Preliminary Injunction, pursuant to Fed. R. Civ. P. 65, to prevent and restrain defendants Bella International Limited, a/k/a Bella, d/b/a Juicy Girl and Juicylicious, Juicy Girl Group, Ltd., Gold Stable International Ltd., Goldstable International Corporation, John Suen, Alison Law, and Jessica Ching Ping Yang (collectively, "Defendants") from counterfeiting and infringing Juicy Couture's famous JUICY family of marks, including but not limited to JUICY COUTURE, JUICY GIRL, JUICY, JC and related design marks.[1]

## I.   PRELIMINARY STATEMENT

Juicy Couture, a California-based apparel company and retailer, has designed, promoted and sold a full range of women's apparel and accessories under one or more of its famous JUICY Marks since at least as early as 1997. The JUICY Marks are at the core of Juicy Couture's success and brand identity. As a result of tremendous investment in advertisement and promotion, significant media attention and publicity, and billions of dollars in sales via Juicy Couture stores, the Internet, and prominent department and specialty stores, the JUICY Marks have become some of the most recognized marks in the United States and throughout the world.

Despite well over a decade of exclusive, widespread, and continuous use of the JUICY Marks in the marketplace by Plaintiff, Defendants, in a blatant attempt to trade upon the goodwill and reputation established therein, are advertising and selling women's apparel closely modeled on Juicy Couture's own to United States consumers under marks identical and/or confusingly similar to Plaintiff's JUICY Marks. Defendants' slavish copying includes not only use of the JUICY Marks with competing goods, but also widespread appropriation of Plaintiff's

---

[1] Plaintiff's registered and common law trademarks, hereinafter collectively referred to as the "JUICY Marks," are set forth in the Declaration of Craig Samuelson ("Samuelson Decl."), dated August 22, 2012, at ¶¶ 3-4 and Exh. A.

1

marketing imagery and motifs, as well as the use of retail websites and related domain names that incorporate Plaintiff's JUICY and JUICY GIRL trademarks.

Plaintiff now brings this motion seeking preliminary injunctive relief to prevent the irreparable harm to Plaintiff resulting from Defendants' unlawful activities. Such relief is warranted, as Defendants' acts are likely to cause confusion, mistake or deception among the consuming public as to the source of the parties' respective goods and services, and as such are in direct violation of Sections 32, 34 and 43 of the Trademark Act of 1946, 15 U.S.C. § 1051, *et seq.*, as amended (the "Lanham Act"), as well as applicable New York common and statutory law.

## II.    STATEMENT OF FACTS

### A.    Plaintiff's Trademarks and Products

Juicy Couture is based in Los Angeles, California and was founded by Pamela Skaist-Levy and Gela Nash-Taylor.[2]  Among the JUICY Marks Plaintiff uses with apparel and related retail services are the word marks JUICY, JUICY COUTURE, JUICY GIRL, CHOOSE JUICY, JUICY BABY, and BORN IN THE GLAMOROUS USA, as well as several design marks, including but not limited to the following:[3]

  



---

[2] *Id.* ¶ 2.
[3] *Id.* ¶¶ 3-4.

Juicy Couture owns the entire right, title and interest in and to the federally registered JUICY Marks, which are valid, subsisting, unrevoked and uncancelled and in which Juicy Couture also owns common law rights in the individual elements incorporated into the registered marks.[4] Since at least as early as 1997, Juicy Couture has been using one or more of the JUICY Marks on and in connection with the advertising and sale of Juicy Couture goods and services throughout the United States and abroad.[5]

Juicy Couture is also known for its signature pink -- ▮ -- which is defined as the "spirit of the Juicy Couture brand" and is featured prominently in Plaintiff's lines of Juicy Couture apparel and Juicy Couture's marketing.[6] Plaintiff's brand is marketed as reflective of a "California casual lifestyle" and as an "irreverent, fun and on-trend lifestyle brand."[7] Juicy Couture's advertising reinforces these themes.[8]

Juicy Couture apparel and accessories featuring the JUICY Marks are sold in JUICY COUTURE boutiques throughout the world with over 800 specialty stores and over 280 department stores in the United States, in addition to JUICY COUTURE branded stores owned by the company and an online retail store at www.juicycouture.com.[9] Products bearing the JUICY Marks have generated billions of dollars in sales over the years, including over $1.5 billion in sales from 2009 through 2011.[10] One of Juicy Couture's most well-known products is its iconic tracksuit -- which is distinctive for its use of innovative fabrics and highly embellished graphics, words and phrases.[11] The Juicy Couture tracksuit was first designed for the singer

---

[4] *Id.* ¶¶ 3-4 and Exh. A (list of the JUICY Marks).
[5] *Id.* ¶¶ 2, 6.
[6] *Id.* ¶ 5.
[7] *Id.* ¶ 7.
[8] *See Id.* ¶ 15.
[9] *Id.* ¶ 11.
[10] *Id.*
[11] *Id.* ¶7.

3

Madonna in 2001. It has since become Juicy Couture's signature product; seen on celebrities ranging from Jennifer Lopez to Gwyneth Paltrow.[12]

Juicy Couture has invested heavily in creating, maintaining and promoting the goodwill associated with the JUICY Marks. The company has spent hundreds of millions of dollars advertising and promoting goods and services offered in connection with the JUICY Marks throughout the United States and abroad in a variety of media.[13] In addition to traditional advertising, Juicy Couture actively promotes its brand, Juicy Couture products, and the JUICY Marks through social media platforms such as Facebook, Twitter, YouTube, and Tumblr.[14]

As a result of Juicy Couture's extensive sales, advertising and promotional efforts, and its dedication to providing goods and services of the highest quality, the JUICY Marks have earned very valuable goodwill and are favorably recognized and relied upon by the relevant trade and consuming public as indicating high quality goods and services originating from a single source: Juicy Couture.

**B.      Defendants' Illegal Activities**

In a deliberate attempt to profit from the goodwill engendered by the JUICY Marks, Defendants are promoting and selling to consumers in the United States apparel and related goods and accessories under the word marks JUICY GIRL, JUICYLICIOUS, and JG.[15] Defendants also use the below design mark which directly incorporates elements of the JUICY Marks such as the word JUICY GIRL, a crown design, initials JG (similar to Juicy Couture's

---

[12] *Id.* ¶ 8.
[13] *Id.* ¶ 9.
[14] *Id.*
[15] *See* Declaration of Tamara Tarbutton, dated August 17, 2012 ("Tarbutton Decl."); Declaration of Kris Buckner, dated August 7, 2012 ("Buckner Decl."); Declaration of Nancy Munno, dated August 6, 2012 ("Munno Decl.").

DWT 19629950v14 0095997-000001

"JC") and Gothic lettering:[16]



(Defendants' cited word and design marks are collectively referred to as the "Infringing Marks.")

Defendants have registered at least four domain names containing Plaintiff's JUICY Marks -- juicygirl.com.hk, juicylicious.com.hk, juicylicious.us, and juicygirl.us (the "Infringing Domain Names").[17]  Despite Defendants being based in Hong Kong, their marketing materials, including but not limited to, their websites have been designed to copy the Juicy Couture "California casual lifestyle" theme.  For example, the Juicy Girl website at juicygirl.com.hk (the "Juicy Girl Website") offers for sale apparel and accessories very similar in appearance to Juicy Couture apparel (including tracksuits)[18] and it contains many of the elements associated with Juicy Couture's marketing, including the hot pink color of its graphics, heart-shaped motifs, and use of images, words and themes tied to California.[19]  Indeed, an online "Style Book" found on the Juicy Girl Website for Spring and Summer 2012 features multiple "California" references, markings and images, such as "SUN-KISSED CALIFORNIA," "HOLLYWOOD," "BEVERLY HILLS," "INSPIRED IN CALIFORNIA" and images of beaches and other scenery related to Southern California.[20]

---

[16] Compl. ¶ 24.
[17] *See* Tarbutton Decl. ¶¶ 15, 17, 19, 21, Exhs. M, O, Q, S.
[18] *See* Complaint ¶ 25 (tracksuit comparisons)
[19] Tarbutton Decl. ¶ 9; Samuelson Decl. ¶ 15 (including a comparison between marketing images disseminated by Juicy Couture and Defendants).
[20] Tarbutton Decl. ¶ 9 and Exh. E.

5

Representative screenshots from the Tarbutton Declaration, Exhibit E, are shown below:



The Juicy Girl Website is clearly aimed at consumers in the United States.  Among other things, it: 1) is in English; 2) boasts of operating worldwide -- including specifically in the United States and Los Angeles; 3) offers products for sale in United States dollars; 4) includes information on international shipping costs to the United States; and 5) requires that purchasers pay through the U.S.-based service, PayPal.[21]  Defendants also use pages on the United States - based social networking sites Facebook and Twitter (a plurality of the visitors to which are located in the United States) to promote the Juicy Girl Website and products.[22]

Defendants' efforts to market into the United States have been successful: the Juicy Girl website is visited by an estimated 3,288 people in the United States each month.[23]  The Juicy Girl Website is also the second unpaid hit resulting from a Google search for Plaintiff's "JUICY GIRL" trademark.[24]

Outside investigators for Juicy Couture located in New York, North Carolina, and California have ordered, purchased and received Juicy Girl brand merchandise from the Juicy Girl Website.[25]  In order to place an order through the Juicy Girl Website, one must register for an account and provide an address.[26]  In the course of purchasing items, the investigators corresponded by email with a sales representative or representatives of Defendants.  The correspondence demonstrates that the representatives were aware that each purchaser was based in the United States and Defendants shipped the merchandise to the United States address of each purchaser at the conclusion of the transactions.[27]  Some of the merchandise was delivered in

---

[21] *Id.* ¶¶ 5-8, 13; Buckner Decl. ¶ 5; Munno Decl. ¶ 4.
[22] Tarbutton Decl. ¶¶ 11-12.
[23] *Id.* ¶ 14.
[24] Tarbutton Decl. ¶ 10.
[25] *See* Tarbutton Decl. ¶ 22-31; Buckner Decl.; Munno Decl.
[26] Tarbutton Decl. ¶ 23.
[27] *See* Tarbutton Decl. ¶¶ 23, 25, 26, 31; Buckner Decl. ¶¶ 9-10; Munno Decl. ¶¶ 5-7.

plastic bags conspicuously marked "Juicy Girl" and "www.juicygirl.com.hk," and labels prominently bore markings including the words "Juicy Girl," hearts, and the initials "JG."[28]

Defendants also maintain a website at the domain name juicylicious.us which they use to promote Defendants' goods and services.[29]  It too contains many of the design elements associated with Juicy Couture and its trademarks, including Juicy Couture's signature pink.  This website also clearly targets United States consumers because it uses a United States–specific ".us" country identifier in its domain name.[30]  Furthermore, the "Latest Collection" page of the juicylicous.us website (located at http://juicylicious.us/product.htm), contains a link to the url http://www.juicygirl.us/text/eindex0.htm.[31]  Though this url does not currently correspond to any valid page, it does contain a domain name registered by Defendants with another United States-specific country identifier, juicygirl.us.[32]

Finally, Defendants also sell Juicy Girl apparel wholesale to the United States through at least one business-to-business website, alibaba.com, one of the largest online wholesalers in the apparel business.[33]

## III.   ARGUMENT

Plaintiff is entitled to a preliminary injunction enjoining Defendants' illicit activities complained of herein and an order disabling the websites associated with the Infringing Domain Names.  Once a violation of the Lanham Act is demonstrated, injunctive relief will readily issue.[34]  Courts have granted preliminary relief when a party's proprietary rights are threatened

---

[28] Tarbutton Decl. ¶¶ 26, 31; Buckner Decl. ¶ 11; Munno Decl. ¶ 7.
[29] Tarbutton Decl. ¶¶ 18-19, Exh. Q
[30] *Id.* Exh. P.
[31] *Id.* ¶ 20.
[32] *Id.* ¶ 21, Exh. S.
[33] Buckner Decl. ¶¶ 12-13
[34] *See, e.g., Dallas Cowboys Cheerleaders v. Pussycat Cinema, Ltd.*, 604 F.2d 200, 205 (2d Cir. 1979); *Boston Professional Hockey Ass'n v. Dallas Cap & Emblem Mfg., Inc.*, 510 F.2d 1004, 1013 (5th Cir.), *cert. denied*, 423 U.S. 868 (1975); *Warner Bros., Inc. v. Gay Toys, Inc.*, 658 F.2d 76, 79 (2d Cir. 1981).

8

by the sale of potentially inferior versions of its products, bearing marks or ornamentation indicating affiliation with the moving party. Courts base this relief on the trademark holder's "inability to control the nature and quality of the infringer's goods, not because the infringer's goods are necessarily inferior."[35]

The Second Circuit holds that in order to obtain preliminary injunctive relief, a party must establish: (1) irreparable harm; and (2) either (a) probable success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation, with the balance of hardships tipping decidedly in favor of the party requesting preliminary relief.[36] This standard applies where a preliminary injunction is sought for an alleged trademark infringement.[37] As shown below, Plaintiff meets each of these criteria.[38]

**A.     Plaintiff will Suffer Irreparable Injury Absent the Injunction and Damages Are an Insufficient Remedy**

This Court has held that, "with respect to [] trademark infringement claims, irreparable harm may be presumed upon a showing that [a plaintiff's] trademark is protectable and that a likelihood of confusion exists as to the ownership or source of goods in question."[39] The harm to

---

[35] *Wesley-Jessen Div. of Schering Corp. v. Bausch & Lomb, Inc.*, 698 F.2d 862, 867 (7th Cir. 1983) (internal citations omitted); *accord El Greco Leather Prods. Co. v. Shoe World, Inc.*, 806 F.2d 392, 395 ("[T]he actual quality of the goods is irrelevant; it is the control of quality that a trademark holder is entitled to maintain.") (2d Cir. 1986); *Polymer Technology Corp. v. Mimran*, 975 F.2d 58, 62 (2d Cir. 1992) (same), *aff'd* 37 F.3d 74 (2d Cir. 1994).
[36] *Fisher-Price, Inc. v. Well-Made Toy Mfg. Corp.*, 25 F.3d 119, 122 (2d Cir. 1994); *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979); *Firma Melodiya v. ZYX Music GmbH*, 882 F. Supp. 1306, 1311 (S.D.N.Y. 1995).
[37] *Dallas Cowboys Cheerleaders, Inc.*, 604 F.2d at 206-07.
[38] Although the Second Circuit has not yet addressed the matter, some courts in this district have applied a slightly different standard explicitly adopted by the Second Circuit in copyright matters. *See, e.g.*, *New York City Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 328 (S.D.N.Y. 2010). Under this formulation, a plaintiff must show: (i) a likelihood of success on the merits; (ii) that the plaintiff will suffer irreparable injury in the absence of an injunction; (iii) that the remedies at law are inadequate to compensate for the injury; (iv) that the balance of hardships tips in plaintiff's favor; and (v) that the public interest will not be disserved by the issuance of a preliminary injunction. *Id.* Under either standard, an injunction should issue in this case.
[39] *Firma Melodiya*, 882 F. Supp. at 1311. Although courts in this Circuit have abrogated the presumption of irreparable harm as it applies to patent and copyright claims and have called into question this presumption as it applies to trademark infringement, Plaintiff believes that the presumption of harm still applies to trademark infringements and particularly to claims of willful counterfeiting. *Cf. New York City Triathlon, LLC.*, 704 F. Supp. 2d at 343. Regardless, Plaintiff has demonstrated that it is suffering a loss of goodwill and a loss of

9

Plaintiff as a result of Defendants' use of the Infringing Marks is both immediate and irreparable

and will continue unless enjoined.  As noted above and in detail in the Samuelson Declaration,

Plaintiff has invested substantial effort and expenditures in developing the goodwill and

reputation that is now associated with the JUICY Marks.[40]  By misappropriating Plaintiff's

JUICY Marks, Defendants are not only trading on Plaintiff's earned goodwill, but also taking

from Plaintiff the ability to control its reputation and the quality of the goods and services

offered under the JUICY Marks.  This harm cannot be quantified and is irreparable.

**B.**      **Likelihood of Success on the Merits**

     **1.**      <u>**Plaintiff is Likely to Prevail on its Claim for Trademark Counterfeiting**</u>

Plaintiff is likely to prevail on its trademark counterfeiting claim because (1) the JUICY

Marks are entitled to protection[41] and (2) consumers are likely to be confused as to the source of

Defendants' products marketed and sold under identical copies of Plaintiff's JUICY and JUICY

GIRL registered trademarks.

Courts in this District have found that, "where counterfeit marks are involved, it is not

necessary to perform the step-by-step examination of each *Polaroid* factor because counterfeit

marks are inherently confusing."[42]  A counterfeit mark is (1) a non-genuine mark which is

identical to or substantially indistinguishable from a registered mark which is in use; (2) which is

---

control over the reputation of Plaintiff's JUICY Marks, which is sufficient to establish irreparable harm. *New York City Triathlon, LLC*, 704 F. Supp. 2d at 343 *(citing Tom Doherty Assocs. v. Saban Entm't, Inc.*, 60 F.3d 27, 37-38 (2d Cir. 1995)(finding irreparable harm based on plaintiff's prospective loss of goodwill and loss of control over the reputation of its mark)).

[40] Samuelson Decl. ¶ 9.

[41] *See*, Section III(2)(b)(i) *infra* for discussion on the protectability/validity of Plaintiff's registered JUICY Marks.

[42] *Lorillard Tobacco Co. v. Jamelis Grocery, Inc.*, 378 F. Supp. 2d 448, 455 (S.D.N.Y. 2005) (internal quotation marks omitted); *see also Gucci America, Inc. v. Exclusive Imports Intern.*, No. 99 Civ. 11490, 2007 WL 840128, at *4 (S.D.N.Y. Mar. 19, 2007) (same), vacated on other grounds by *Gucci America, Inc. v. Exclusive Imports Intern.*, No. Civ. A. 99-11490, 2007 WL 2892668 (S.D.N.Y. Oct. 2, 2007).

10

being used for the same goods and services as the accused mark; and (3) the accused use at the time of production is not authorized by the owner of the mark.[43]

Here, all three factors are present: (1) as described in the Samuelson, Tarbutton, Buckner and Munno Declarations, Defendants' products and websites bear near facsimile copies of Plaintiff's JUICY and JUICY GIRL trademarks;[44] (2) Defendants, like Plaintiff, are offering for sale women's and girl's apparel and accessories; and (3) Plaintiff has not authorized Defendants' use of the JUICY and JUICY GIRL marks.

As such, Plaintiff has demonstrated that consumers are likely to be confused as to the source of Defendants' counterfeit goods and services.

## 2.   Plaintiff is Likely to Prevail on its Claims for Trademark Infringement and Unfair Competition[45]

Plaintiff is likely to prevail on its trademark infringement and unfair competition claims because: (1) the JUICY Marks are entitled to protection; and (2) consumers are likely to be confused as to the source of Defendants' products and in the promotion of them.[46] The Second Circuit has articulated eight factors (often referred to as "the *Polaroid* factors") to be

---

[43] *See* Lanham Act §§ 34(d) and 45; 15 U.S.C. §§ 1116(d) and 1127.
[44] Samuelson Decl. ¶ 15 (including a comparison between marketing images disseminated by Juicy Couture and Defendants); Tarbutton Decl. ¶¶ 7, 9, 26, 31, Exhs. A, C-E, N, P, R, T, U; Buckner Decl. ¶ 11; Munno Decl. ¶ 7.
[45] The standard for assessing likelihood of confusion for Plaintiff's state law infringement and unfair competition claims essentially mirrors that for Plaintiff's Lanham Act claims set forth herein. *See United States Polo Ass'n v. PRL USA Holdings, Inc.,* 800 F. Supp. 2d 515, 538 (S.D.N.Y. 2011). The only distinction  is that bad faith must be shown to establish uncommon law unfair competition. *Id.* Plaintiff is therefore entitled to the requested relief with respect to its state law claims as well. Similarly, claims under New York General Business Law § 349 for deceptive acts and business practice are proven because misbranding of goods to falsely suggest an affiliation with Plaintiff misleads consumers. *New York City Triathlon, LLC v. NYC Triathlon Club, Inc.,* 704 F. Supp. 2d 305, 325, n.7 (S.D.N.Y. 2010) (citing *GFTM, Inc. v. GFTM, LLC,* 215 F. Supp. 2d 273, 301-02 (S.D.N.Y. 2002).
[46] *See Otokoyama Co. Ltd. v. Wine of Japan Import, Inc.,* 175 F.3d 266, 270 (2d Cir. 1999) ("The plaintiff in a trademark infringement action establishes a likelihood of success by showing both 1) a legal, exclusive right to the mark, and 2) a likelihood that customers will be confused as to the source of the infringing product.").

11

considered when assessing the likelihood of consumer confusion:[47]

1)   the strength of the plaintiffs mark;

2)   the similarity of the plaintiffs and defendant's marks;

3)   the competitive proximity of the products or services;

4)   the likelihood that the plaintiff will "bridge the gap" and offer a product or service similar to the defendant's;

5)   actual confusion between the products or services;

6)   good faith on the defendant's part;

7)   the quality of the defendant's products or services; and

8)   the sophistication of buyers

The factors apply to competing and non-competing goods and services, and no single factor is intended to be dispositive.[48] Since the analysis used to determine whether a trademark is valid and entitled to protection overlaps with the analysis generally used to assess the first *Polaroid* factor -- *i.e.,* strength of the mark -- the strength and protectability of Plaintiff's JUICY Marks are discussed together below.

a.   **The JUICY Marks are Strong, Inherently Distinctive, Valid and Protectable**

The literal and design elements of Plaintiff's JUICY Marks are arbitrary and fanciful designations that have no meaning in the trade or are used in a meaningless context with Plaintiff's products. Accordingly, the JUICY Marks are inherently distinctive and entitled to broad protection.[49] Moreover, Plaintiff's registrations for the JUICY Marks are valid and subsisting[50] and constitute *prima facie* evidence of Plaintiff's exclusive right to use the marks in

---

[47] *Polaroid Corp. v. Polarad Elecs. Corp.,* 287 F.2d 492,495 (2d Cir. 1961), *cert. denied,* 368 U.S. 820 (1961); *see also, Virgin Enters. Ltd. v. Nawab,* 335 F.3d 141, 146-147 (2d Cir. 2003).
[48] *See Natural Organics, Inc. v. Nutraceutical Corp.,* 426 F.3d 576, 578 (2d Cir. 2005); *Fruit-Ices Corp. v. Coolbrands Int'l, Inc.,* 335 F. Supp. 2d 412, 418-19 (S.D.N.Y. 2004).
[49] *Abercrombie & Fitch Co. v. Hunting World, Inc.,* 537 F.2d 4, 9 (2d Cir.1976) (arbitrary and fanciful marks are afforded the highest level of protection on the spectrum of distinctiveness)
[50] Samuelson Decl. ¶ 4, Exh. A.

DWT 19629950v14 0095997-000001

connection with the goods and services at issue in United States commerce.[51]  Many of

Plaintiff's registrations are also incontestable.[52]  Incontestable registrations are conclusive

evidence of mark validity and the registrant's exclusive right to use the mark registered.[53]

Furthermore, Plaintiff has exclusively, substantially and continuously used the JUICY

Marks for the sole purpose of designating the source of its goods and services.[54]  Plaintiff has

also made a substantial investment in marketing and promoting the goods and services that bear

the JUICY Marks and has benefitted and continues to benefit from widespread unsolicited media

coverage, celebrity sightings, product placement in blockbuster Hollywood motion pictures, and

billions of dollars of sales.[55]

Therefore, Plaintiff JUICY Marks are strong, famous and protectable.  This factor should

be given considerable weight in the analysis.[56]

    **b.**     **Defendants' Marks are Identical and/or Confusing Similar to Plaintiff's JUICY Marks**

Defendants' Infringing Marks are identical and/or confusingly similar in appearance,

sound connotation and overall commercial impression to Plaintiff's JUICY Marks.[57]  As

discussed above, Defendants' use of JUICY and JUICY GIRL constitutes trademark

counterfeiting and as such, the likelihood of confusion is inherent. Defendants have also adopted

---

[51] *See* 15 U.S.C. § 1057(b).

[52] *See* 15 U.S.C. § 1065 (mark in continuous use for five consecutive years subsequent to date of registration is incontestable, subject to qualifications); *Wal-Mart Stores, Inc. v. Samara Bros, Inc.*, 529 U.S. 205, 209 (2000) ("Registration of a mark . . . ordinarily renders the registered mark incontestable after five years of continuous use . . . .").

[53] 15 U.S.C. § 1115.

[54] Samuelson Decl. ¶¶ 2-6.

[55] Samuelson Decl. ¶¶ 8-12.

[56] *See Casa Editrice Bonechi, S.R.L. v. Irving Weisdorf & Co., Ltd.*, No. 95 Civ. 4008 (AGS), 1995 WL 528001, at *7 (S.D.N.Y. Sept. 6, 1995) (granting preliminary injunction and noting, "[t]he strength of a mark is among the most important factors in the *Polaroid* analysis) (citation omitted); *T. Anthony, Ltd. v. Malletier*, No. 93 Civ. 6900 (KC),1993 WL 659682, at *3 (S.D.N.Y. Nov. 24, 1993) (same).

[57] *Malletier v. Burlington Coat Factory Warehouse Corp.*, 426 F.3d, 532, 537 (2d Cir. 2005) (quotation omitted). "[M]arks are considered similar when they are similar in appearance, sound, and meaning." *Clinique Labs., Inc. v DEP Corp.*, 945 F. Supp. 547, 552 (S.D.N.Y. 1996) (citation omitted).

13

and are using the trademarks JUICYLICIOUS, JG and a crown design,[58] which are confusingly similar to Plaintiff's JUICY, JUICY COUTURE, JC and design marks.  Defendants' JUICYLICIOUS mark is substantially similar to the family of JUICY Marks.  The dominant portion of JUICYLICIOUS is JUICY and the addition of the subordinate and laudatory term LICIOUS does not change the mark's connotation.  "It is the general rule that one may not appropriate the entire mark of another and avoid a likelihood of confusion by the addition thereto of descriptive or otherwise subordinate matter."[59]  Defendants' addition of the term LICIOUS to the JUICY mark does little to dispel likely confusion and in fact enhances the likelihood that consumers will assume an affiliation or sponsorship.  Likewise, Defendants' combination of JG with certain crest/crown design elements mimics Plaintiff's JC and crown design marks, and when combined with the term JUICY GIRL immediately points to Plaintiff as the source of Defendants' goods and services.[60]

Moreover, the context in which Defendants' goods are marketed and promoted under Defendants' Infringing Marks is almost identical to the promotional campaign in which Plaintiff markets and promotes its goods under Plaintiff's JUICY Marks.  When viewed in the context of the Defendants' use on their products, marketing materials and websites, the overall commercial impression created by the JUICYLICIOUS and JG marks is identical or similar to that created by Plaintiff's family of JUICY Marks.  As such, this single factor in the analysis weighs heavily in Plaintiff's favor.

---

[58] Compl. ¶ 24.
[59] *Bellbrook Dairies, Inc. v. Hawthorn-Mellody Farms Dairy, Inc.,* 253 F.2d 431, 432 (C.C.P.A. 1958) ("Vita-Slim" confusingly similar to "Slim") (citations omitted); *see also A.T. Cross Co. v. Jonathan Bradley Pens, Inc.,* 470 F.2d 689, 692 (2d Cir. 1972) (finding addition of "by Bradley" did not prevent confusion between plaintiffs protected "Cross" pens and defendant's "LaCross by Bradley" pens); *Rodgers v. Wright,* 544 F. Supp. 2d 302, 311 (S.D.N.Y. 2008) (defendants' spin-off musical group "First Ladies of Chic" was confusingly similar to original "Chic"); *Am. Express Co. v. Am. Express Limousine Serv.,* 772 F. Supp. 729, 733 (E.D.N.Y. 1991) (finding the defendant's addition of "Limousine Services" to the plaintiffs "American Express" mark enhanced rather than dispelled confusion).
[60] *Compare* Samuelson Decl., Ex A and Compl. ¶ 24.

14

      c.      **The Parties' Goods are Identical or Related, Travel in the Same Channels of Trade and are Targeted to the Same Consumers**

The third *Polaroid* factor (the competitive proximity of the products or services) also weighs heavily in Plaintiff's favor. The proximity inquiry looks both to the nature of the goods and the structure of the relevant market and includes consideration of "the class of consumers to whom the goods are sold, the manner of advertising, the channels through which the goods are sold, and the extent to which the goods or services fall within the same class or are used together."[61] Thus, "the closer the secondary user's goods are to those the consumer has seen marketed under the prior user's brand, the more likely that the consumer will mistakenly assume a common source."[62]

The parties' respective goods and services are identical and Defendants have taken the additional step to imitate the look and feel of Plaintiff's apparel and to market those goods under identical and/or confusingly similar trademarks while copying critical elements of Plaintiff's marketing campaign and strategy.[63] Both parties' goods are offered for sale via the Internet and are targeted to the same consumer groups -- women and girls.

      d.      **Bridging the Gap Between the Parties' Goods and Services**

The fourth *Polaroid* factor considers the likelihood that the Plaintiff will bridge the gap and offer a product or service similar to the Defendant's. This factor also weighs heavily in Plaintiff's favor since the goods and services that both parties offer are identical. There is no gap to bridge.

---

[61] *Clinique Labs., Inc. v DEP Corp.,* 945 F.Supp. 547, 553 (S.D.N.Y. 1996) (citations omitted).

[62] *Virgin Enters.,* 335 F.3d at 150 (citation omitted).

[63] *See* Samuelson Decl. ¶ 15 (including a comparison between marketing images disseminated by Juicy Couture and Defendants); Tarbutton Decl. ¶ 9, Exh. E.

### e.    Evidence of Actual Confusion

"[I]t is black letter law that actual confusion need not be shown to prevail under the

Lanham Act, since actual confusion is very difficult to prove and the Act requires only a

likelihood of confusion as to source."[64] This is particularly true when an infringing product or

service has been on the market for only a short time.[65] In addition, as indicated by the Google

ranking of the Juicy Girl Website when searching Plaintiff's JUICY GIRL trademark, there is

little doubt that Defendants are creating initial interest confusion.[66]

### f.    Defendants are Acting in Bad Faith

The sixth *Polaroid* factor considers whether Defendants were operating in good faith

when selecting their marks -- i.e. "whether the defendant adopted its mark with the intention of

capitalizing on plaintiff's reputation and goodwill, and any confusion between his and the senior

user's product.  A defendant's awareness of plaintiff's mark may give rise to an inference of bad

faith, which is bolstered if the defendant offers no credible explanation for its adoption of the

mark."[67] Defendants have been made aware of Plaintiff's rights in the JUICY Marks at least as

early 2008, when Plaintiff initiated an infringement action in Hong Kong against Defendants for

their use of the JUICY Marks in that jurisdiction.[68] Defendants have now come into Plaintiff's

backyard and have willfully violated Plaintiff's trademark rights.

---

[64] *Lois Sportswear, U.S.A. v. Levi Strauss & Co.*, 799 F.2d 867, 875 (2d Cir. 1986); *see also Pfizer Inc. v. Sachs*, 652 F. Supp. 2d 512, 523 (S.D.N.Y. 2009)(same).

[65] *See Pfizer*, 652 F. Supp. 2d at 523 ("The absence of proof of actual confusion is not fatal to a finding of likelihood [of confusion], particularly where, as here, the junior mark has been in the marketplace for a relatively short period of time.") (internal quotation marks omitted); *Stern's Miracle-Gro Prods., Inc. v. Shark Prods., Inc.*, 823 F. Supp. 1077, 1087 (S.D.N.Y. 1993) ("It would be unfair to penalize plaintiff for acting to protect [its] trademark rights before serious damage has occurred.") (quoting *Lois Sportswear*, 799 F.2d at 875).

[66] *See, e.g., Jordache Enters., Inc. v. Levi Strauss & Co.*, 841 F. Supp. 506, 514-15 (S.D.N.Y. 1993)(explaining that initial confusion of potential consumers attracted by junior user's mark is actionable even where there is no confusion at the time of sale)

[67] *Artisan Mfg. Corp. v. All Granite & Marble Corp.*, 559 F. Supp. 2d 442, 452 (S.D,N.Y. 2008) (citation omitted).

[68] Compl. ¶ 34; *see Pfizer*, 652 F. Supp. 2d at 523 (noting that defendants were aware of plaintiff's marks and that defendants refused to comply with plaintiffs cease-and-desist letters).

16

Further, "[w]hen a company appropriates an identical mark that is well known, an inference can be drawn that the company intends to capitalize on the goodwill and reputation of the mark . . . ."[69] Defendants' adoption and use of marks that are identical to Plaintiff's JUICY and JUICY GIRL marks is dispositive of Defendants bad faith and willful infringement. Defendants' wholesale appropriation of Juicy Couture's marketing motifs only underscores Defendants' willful copying and bad faith.[70] This factor clearly weighs in favor of finding likely confusion.

### g.   The Quality of Defendants' Goods

The seventh Polaroid factor "is primarily concerned with whether the senior user's reputation could be jeopardized by virtue of the fact that the junior user's product is of inferior quality."[71] Here, "the quality of the secondary user's product goes more to the harm that confusion can cause the plaintiff's mark and reputation than to the likelihood of confusion."[72]

Defendants' goods -- samples of which will be provided for the Court's inspection -- are of an inferior quality and there is a strong risk that Defendants' use of the Infringing Marks will harm Plaintiff's reputation and goodwill.  Plaintiff's goods are worn by celebrities and fashion conscience consumers who expect and demand a high standard of quality, which Plaintiff has consistently delivered.[73]  Any association with Defendants' inferior goods would jeopardize Plaintiff's highly regarded and longstanding reputation.

---

[69] *See Kraft Gen. Foods. Inc. v. Allied Old English. Inc.*, 831 F. Supp. 123, 132 (S.D.N.Y. 1993); *Stem's Miracle-Gro Prods., Inc. v. Shark Prods.. Inc.*, 823 F. Supp. 1077, 1087 (S.D.N.Y. 1993).
[70] *See* Samuelson Decl. ¶ 15.
[71] *Pfizer*, 652 F. Supp. 2d at 523 (quotation omitted).
[72] *Virgin Enters.*, 335 F.3d at 152.
[73] Samuelson Decl. ¶¶ 8-12.

h.   **The Sophistication of the Consumers**

The final *Polaroid* factor analyzes the level of sophistication of consumers in the relevant market.[74] Even sophisticated consumers may be confused when two parties' marks and services are highly similar.[75] It has been held that confusion is especially likely for "unsophisticated buyers."[76] But "where the products are identical and the marks are identical, the sophistication of buyers cannot be relied on to prevent confusion."[77] Hence, because both parties produce apparel under identical and/or highly similar marks, this factor does not mitigate the likelihood of confusion.

3.   **Plaintiff is Likely Prevail on its Anticybersquatting Consumer Protection Act Claims**

The Anticybersquatting Consumer Protection Act of 1996 (ACPA) applies when a domain name registrant has a bad faith intent to profit from a domain name that "is identical or confusingly similar to or dilutive of" the distinctive or famous mark of another.[78] In addition to other damages, "a court may order the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark."[79] As courts have recognized, one primary focus of ACPA is to combat sellers of counterfeit goods who "register well-known marks to prey on consumer confusion by misusing the domain name to divert customers from the

---

[74] *See MetLife, Inc.* v. *Metro. Nat'l Bank,* 388 F. Supp. 2d 223,235 (S.D.N.Y. 2005); *GTFM,* 215 F. Supp. 2d at 298 ("A trial court must consider the general impression of the ordinary consumer, buying under normal market conditions and giving the attention such purchasers usually give in purchasing the product at issue.").

[75] *See The Morningside Group Ltd.* v.. *Morningside Capital Group, L.L.C.,* 182 F.3d 133, 143 (2d Cir. 1999) ("Indeed [the Second Circuit] has noted that the market sophistication might in some circumstances increase the likelihood of confusion. . . . It is clear in all events that when, as here, there is a high degree of similarity between the parties' services and marks, the sophistication of the buyers cannot be relied on to prevent confusion.") (quotation and citation omitted); *Pfizer,* 652 F. Supp. 2d at 524 ("even a highly sophisticated and discriminating class of consumers cannot be relied upon to allay confusion when the marks . . . are nearly identical.") (quotation omitted).

[76] *See Guinness United Distillers & Vintners B.V. v. Anheuser-Busch, Inc.,* No. 02 Civ. 0861 (LMM), 2002 WL 1543817, at *6 (S.D.N.Y. July 12, 2002) (noting that unsophisticated buyers increase the likelihood of confusion) (quotation omitted).

[77] *See McGregor-Doniger Inc. v. Drizzle Inc.,* 599 F.2d 1126, 1137 (2d Cir.1979).

[78] *Sporty's Farm LLC v. Sportman's Mkt., Inc.,* 202 F.3d 489, 495 (2d Cir. 2000).

[79] 15 U.S.C. § 1125(d).

18

mark owner's site to the cybersquatter's own site[, and] target distinctive marks to defraud consumers . . . ."[80]

As set forth above, Plaintiff's JUICY Marks are highly distinctive, entitled to a broad scope of protection, and are key to Plaintiff's commercial success.[81] Defendants are using Plaintiff's JUICY Marks or substantially similar variations thereof on their goods, in their promotional activities, on the websites and in their domain names with full knowledge of Plaintiff's exclusive rights therein.[82] Defendants' use of Plaintiff's Juicy Marks and colorable imitations is in bad faith and violates the ACPA.[83]

## C.    The Balance of Hardships and Public Interest Favor the Injunction

If the balance between the harm from the wrongful denial of a preliminary injunction outweighs any harm the Defendants would suffer as a result of an injunction that cannot be cured by prevailing on the merits and recovering on Plaintiff's injunction bond, an injunction should issue.  The harm to Plaintiff is irreparable. The further unauthorized use of the JUICY Marks threatens Plaintiff's hard-won reputation because Plaintiff will lose control over the quality and appearance of its products, and the quality and appearance of their presentation online, which will destroy the value of the JUICY Marks as a designation of source.  On the other hand, the potential harm to Defendants is purely monetary.  Defendants have no legitimate interest in selling counterfeit products or otherwise using the JUICY Marks without Plaintiff's permission. Further weighing the balance in favor of Plaintiff, "the public has an interest in not being

---

[80] *Lucas Nursery v. Grosse*, 359 F.3d 806, 809 (6th Cir. 2004); see also, *Diarama Trading Co., Inc. v. J. Walter Thompson U.S.A., Inc.*, No. 01 Civ. 2950, 2005 WL 2148925, at *12 (S.D.N.Y. Sept. 6, 2005); *Albert Furst von Thurn und Taxis v. Karl Prince von Thurn und Taxis*, No. 04 Civ. 6107, 2006 WL 2289847, at *13 (S.D.N.Y. Aug. 8, 2006).
[81] *See* Samuelson Decl. ¶¶ 3-14.
[82] Samuelson Decl. ¶ 15 (including a comparison between marketing images disseminated by Juicy Couture and Defendants); Tarbutton Decl. ¶¶ 7, 9, 26, 31, Exhs. A, C-E, N, P, R, T, U; Buckner Decl. ¶ 11; Munno Decl. ¶ 7.
[83] *Mattel, Inc. v. Internet Dimensions, Inc.*, 55 U.S.P.Q. 2d 1620, 1623 (S.D.N.Y. 2000; *Louis Vuitton Malletier & Oakley, Inc. v. Veit*, 211 F. Supp. 2d 578, 584-585 (D. Pa. 2002).

19

deceived -- in being assured that the mark it associates with a product is not attached to goods of unknown origin and quality."[84]  Defendants' deceptive websites associated with the Infringing Domain Names thusly harm the public interest.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court grant an order preliminarily enjoining Defendants from selling their counterfeit goods or otherwise infringing on Plaintiff's rights in the JUICY Marks, including an order disabling Defendants' Infringing Domains and websites.

Dated: New York, New York
      August 24, 2012

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

By:_____
    Roxanne G. Elings
    Charles A. LeGrand
    George P. Wukoson

1633 Broadway
New York, New York 10019
(212) 489-8230

*Attorneys for Plaintiff Juicy Couture, Inc.*

---

[84] *Pretty Girl, Inc. v. Pretty Girl Fashions, Inc.*, 778 F. Supp. 2d 261, 270 (quoting *New York City Triathlon*, 704 F. Supp. 2d at 344).