UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                   :

JUICY COUTURE, INC.,                        :

                      Plaintiff,    :

                      -v-               :

BELLA INTERNATIONAL LIMITED, et al.,  :

                      Defendants. :
                                                   :
------------------------------------------------------------X



No. 12 Civ. 5801 (RA)

OPINION AND ORDER

RONNIE ABRAMS, United States District Judge:

      Plaintiff Juicy Couture, Inc. ("Juicy" or "Plaintiff") brings this action against Defendants Bella International Limited, Juicy Girl Ltd., Gold Stable International Ltd., Goldstable International Corporation, John Suen, and Jessica Ching Ping Yang (collectively, "Defendants") asserting, *inter alia*, claims for trademark infringement, trademark counterfeiting and cybersquatting. Before the Court is Plaintiff's motion for a preliminary injunction seeking to enjoin Defendants from counterfeiting and infringing Plaintiff's trademarks. The Court finds that Plaintiff has demonstrated the need for a preliminary injunction. The Court declines, however, to exercise extraterritorial jurisdiction over Defendants' foreign activities. Accordingly, for the reasons that follow, Plaintiff's motion for a preliminary injunction is granted in part and denied in part.[1]

---

[1] Plaintiff also names Alison Law as a defendant in this action. (Compl. ¶ 7; Pl.'s Mem. 1.) Ms. Law has not appeared and the Court has no reason to believe she has notice of this action or of Plaintiff's motion for a preliminary injunction. Defense counsel has indicated that it represents all Defendants except for Ms. Law. (Transcript of February 14, 2013 Hearing ("Tr.") 2-3.) Accordingly, this Order does not bind Ms. Law. See Fed. R. Civ. P. 65(a)(1) ("The court may issue a preliminary injunction only on notice to the adverse party.").

I.    Background[2]

A. The Parties

Plaintiff, a California corporation, has sold fashion apparel and related accessories since 1997. (Craig Samuelson Declaration, Aug. 22, 2012 ("Samuelson Decl.") ¶ 2.) Juicy's collections are sold in Juicy Couture boutiques throughout the world in over 800 specialty stores and over 280 department stores in the United States. (Id. ¶ 11.) Plaintiff also maintains an online retail store at www.juicycouture.com. (Id.) Plaintiff has spent hundreds of millions of dollars advertising its products through traditional media as well as social media platforms such as Facebook, Twitter and YouTube. (Id. ¶ 9.) Juicy prides itself on having introduced a "'California lifestyle' to the world – an 'irreverent, fun, and on-trend lifestyle brand.'" (Id. ¶ 7.) Its best known product is a velour tracksuit, which was introduced in 2001 and has since been worn by celebrities including Madonna, Jennifer Lopez and Gwyneth Paltrow, as have many of its other products. (Id. ¶¶ 7-8, 10.) Juicy products generated over $1.5 billion in sales from 2009 through 2011. (Id. ¶ 11.)

Defendants design, manufacture and sell apparel and accessories, and have been operating fashion retail shops since 1995. (John Suen Declaration, Sept. 29, 2012 ("Suen Decl.") ¶ 7.) Defendants sell their products under several different brands throughout the world, primarily in Hong Kong, the People's Republic of China and Macao. (Id. ¶ 4.) Their primary brand is Juicy Girl. (Id. ¶ 8.) All Defendants, with the exception of Goldstable International Corporation ("Goldstable Corp."), are Hong Kong corporate entities or citizens of, or individuals residing in, Hong Kong. (Countercls. ¶¶ 4-8.) Suen and Yang co-founded Bella Boutique Shop in Hong Kong in 1997 as a fashion retail shop. (Suen Decl. ¶ 1.) Their business, now under the

---

[2]    The following facts are taken from the Complaint, hearing testimony and exhibits, as well as the parties' memoranda of law.

umbrella of Bella International, Ltd. ("Bella"), has grown to include over fifteen stores. (Id. ¶ 7.) Defendants use the social media platforms Facebook, Twitter and Sina Weibo (which is largely directed to consumers in the People's Republic of China) for promotion of their brands. (Id. ¶ 19.) Defendants spent over $250,000 in marketing and advertising in each of the last two years and had sales in 2011 of close to $13 million. (Suen Decl. ¶¶ 12-13.)

### B. The Relevant Trademarks and Their Use

Plaintiff owns several federally registered trademarks (the "Juicy Marks"). These registered trademarks include JUICY, JUICY COUTURE, JUICY GIRL, CHOOSE JUICY, JUICY BABY, BORN IN THE GLAMOROUS USA and several design marks, including but not limited to the following:

   

(List of Plaintiff's Registered Marks ("Samuelson Decl. Ex. A.").)[3] Plaintiff uses the Juicy Marks in connection with the sale of apparel and accessories, retail store services and online retail store services. (Id.) The Juicy Marks are among Plaintiff's most important and valuable assets. (Id. ¶ 14.)

Defendants use the marks JUICY GIRL, JUICYLICIOUS and JG in the promotion and sales of their Juicy Girl products. (Tamara Tarbutton Declaration, Aug. 17, 2012 ("Tarbutton Decl.") ¶¶ 26, 31; Nanny Munno Declaration, Aug. 6, 2012 ("Munno Decl.") ¶ 7.) Defendants also use the following design mark, which incorporates the phrase Juicy Girl, the initials JG, a crown and gothic lettering:

---

[3] Plaintiff also asserts rights in numerous unregistered marks. This Opinion solely addresses Plaintiff's registered marks.



(Screenshots of Defendants' Facebook Page ("Tarbutton Decl. Ex. G").)

While the majority of Defendants' sales are made abroad, Defendants have sold products containing these marks in the United States through the website www.juicygirl.com.hk (the "HK Website"). (Suen Decl. ¶ 16; Tarbutton Decl. ¶ 9; Munno Decl. ¶ 7.) The HK Website is maintained and operated in Hong Kong. (Suen Decl. ¶ 14; Defs.' Opp'n 1.) It contains information about the Juicy Girl brand and is capable of accepting online orders from around the world through PayPal. (Suen Decl. ¶¶ 14, 17; Tarbutton Decl. ¶¶ 6, 13.)[4] All of Defendants' known sales to the United States, which total less than $3,000, were made through this website. (Suen Decl. ¶ 16.) A portion of these sales were made to Plaintiff's investigators in connection with this litigation. (Id.) Plaintiff's investigators ordered, purchased and received Defendants' merchandise from the HK Website. (Tarbutton Decl. ¶¶ 23, 25-26, 31; Munno Decl. ¶¶ 5-7.) The clothing and packaging delivered to the investigators in the United States displayed the marks in question. (Tarbutton Decl. ¶¶ 26, 31; Munno Decl. ¶ 7.)

A google.com search for "Juicy Girl" yields Plaintiff's website as the first hit (which appears to be a paid advertisement) and Defendants' website as the second unpaid hit. (Screenshot of google.com search ("Tarbutton Decl. Ex. F.").)

---

[4] Defendants also own or control three other domain names: (1) www.juicylicious.us, (2) www.juicygirl.us, and (3) www.justglam.us. (Suen Decl. ¶ 20.) These websites do not offer products for sale and have never been used to make sales to the United States. (Id.) Plaintiff alleges that Defendants are also registrants of the website www.juicylicious.com.hk. (Compl. ¶ 26; Tarbutton Decl. ¶¶ 16-17.)

### C. Procedural History

In 2008, Plaintiff sued Defendants for trademark infringement in Hong Kong (the "Hong Kong action"). (Suen Decl. ¶ 25.) Discovery in the Hong Kong action has been completed and the parties anticipate a trial sometime in 2013. (Defs.' Opp'n 8; Transcript of February 14, 2013 Hearing ("Tr.") 11.)

On July 27, 2012, Plaintiff filed a complaint against Defendants in this Court alleging the following six causes of action: (1) trademark infringement and counterfeiting pursuant to 15 U.S.C. § 1114; (2) unfair competition and false designation of origin pursuant to 15 U.S.C. § 1125(a); (3) cybersquatting pursuant to the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d)(1); (4) unlawful deceptive acts and practices under New York Business Law; (5) common law trademark infringement; and (6) common law unfair competition. (Compl. ¶¶ 44-78.) The instant motion, filed on August 27, 2012, seeks to enjoin Defendants from the following during the pendency of this action:

1. Using the Juicy Marks, or any reproduction, counterfeit, copy or colorable imitation of the Juicy Marks in connection with the distribution, advertising, offer for sale and/or sale of merchandise not the genuine products of Plaintiff;

2. Passing off, inducing or enabling others to sell or pass off any infringing products as and for Juicy Couture products;

3. Shipping, delivering, holding for sale, distributing, returning, transferring or otherwise moving, storing or disposing of in any manner apparel or other items falsely bearing the Juicy Marks, or any reproduction, counterfeit, copy or colorable imitation of same; and

4. Utilizing the [Defendants' websites] and registering any additional domain names that use or incorporate any of the Juicy Marks.

(Pl.'s Mot. 2.) Plaintiff's motion also requests that the Court "further order[], to effect the requested relief, that, during the pendency of this [a]ction, Defendants' websites . . . be disabled by the appropriate domain name registries or registrars." (Id.) After the motion was fully